IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JEANIE LAWRENCE                                                      PLAINTIFF

V.                          NO. 3:18CV00126 JM/PSH

SOCIAL SECURITY ADMINISTRATION                                  DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Jeanie Lawrence, applied for disability benefits on March 29, 2016, alleging a disability onset date of March 23, 2016. (Tr. at 15). The application was denied initially and upon reconsideration *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Lawrence's claim. (Tr. at 24). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Lawrence has requested judicial review.

For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II. The Commissioner's Decision:

The ALJ found that Ms. Lawrence had not engaged in substantial gainful activity since the alleged onset date of March 23, 2016. (Tr. at 18). At Step Two of the sequential five-step analysis,

the ALJ found that Ms. Lawrence had the following severe impairment: bicep tendinitis status post arthroscopy. *Id*.

The ALJ found that Ms. Lawrence's impairment did not meet or equal a listed impairment. *Id*. Before proceeding to Step Four, the ALJ determined that Ms. Lawrence had the residual functional capacity ("RFC") to perform work at the sedentary level, with some limitations. *Id*. She could not perform right upper extremity overhead reaching responsibilities, and she could not perform more than frequent right upper extremity handling duties. *Id*.

The ALJ next found that Ms. Lawrence was unable to perform any past relevant work. (Tr. at 22). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Ms. Lawrence's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, such as addresser and call out operator. (Tr. at 23). Therefore, the ALJ found that Ms. Lawrence was not disabled. *Id*.

### III. <u>Discussion</u>:

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have

supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B. Ms. Lawrence's Arguments on Appeal

Ms. Lawrence contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the RFC did not fully incorporate her limitations stemming from a shoulder condition, and that the ALJ failed to conduct a proper credibility analysis or develop the record. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Lawrence had nerve conduction studies of her upper extremities that were normal in April 2015. (Tr. at 320). X-rays of her right shoulder on April 6, 2016 were unremarkable. (Tr. at 294). A May 2016 MRI of the right shoulder showed mild partial tearing of the supraspinatus tendon, with mild degenerative changes and minimal bursitis. (Tr. at 463-464). Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

Despite complaining of shoulder pain, throughout March and April 2016, she had normal movement in all extremities. (Tr. at 327-343). On May 3, 2016, she had pain and tenderness in the shoulder, but a brisk triceps reflex. (Tr. at 425). While an x-ray of the right shoulder on August 17,

2016 was unremarkable and showed the rotator cuff was intact, Ms. Lawrence had a shoulder arthroscopy that month. She said she had two complete days free of pain, and peritendinous injections provided substantial relief. (Tr. at 486-489). While she said in September 2016 that pain was worse after surgery, at the end of September she was improved and she had good passive range of motion. (Tr. at 479-480). In December 2016, Ms. Lawrence was still improving and her physical therapist said she was doing well. (Tr. at 478). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

Ms. Lawrence told her doctor on January 31, 2017 that she was in constant pain, but her doctor said it was likely due to inflammation and that she needed to exercise and quit smoking. (Tr. at 473-474). A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). By February 2017, she had no pain in her shoulder and was doing very well. (Tr. at 472).

Dr. John Ball, an orthopedist, saw Ms. Lawrence just a couple of times, but wrote a one-sentence letter on July 6, 2016 that said Ms. Lawrence could not return to work. (Tr. at 429). This statement was conclusory, did not cite to medical evidence, and was based on a very short treatment record. It is inconsistent with the balance of the medical record, and the statement predated the surgery that resulted in improvement to Ms. Lawrence's shoulder. The ALJ gave Dr. Ball's opinion little weight. (Tr. at 22). "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000). Also, short, conclusory opinions are entitled to little weight. *Juszczyk v. Astrue*, 542 F.3d 626, 632

4

(8th Cir. 2008). While the two state-agency reviewing physicians found no severe impairment, the ALJ found the shoulder problem to be severe and likewise limited the RFC.

A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). In this case, shoulder surgery seemed to mitigate Ms. Lawrence's pain over the long term. Injections helped on at least one occasion, and her physical therapist reported that she was doing well. Furthermore, objective testing revealed only mild conditions. The RFC with limited use of the right shoulder was appropriate based on the record as a whole.

Ms. Lawrence also argues that the ALJ did not conduct a proper credibility analysis. Social Security Ruling 16-3p, 2016 SSR LEXIS 4 ("SSR 16-3p"), removed the word "credibility" from the analysis of a claimant's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. SSR 16-3p became effective on March 28, 2016, and the underlying analysis incorporates the familiar factors that were in place prior to the new ruling. *Martsolf v. Colvin*, No. 6: 16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D. Mo. Jan. 9, 2017). The ALJ must still give consideration to all of the evidence presented relating to subjective complaints, including: 1) prior work record; 2) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

In his opinion, the ALJ discussed Ms. Lawrence's daily activities. She said in her function report that she could get her kids ready for school, cook meals, do laundry and walk her dogs. (Tr. at 305-308). A year later, at the hearing, she said she was virtually incapacitated in terms of daily activities. (Tr. at 61). Her testimony conflicts with the function report and does not reflect the improvement she experienced after surgery. The ALJ properly discussed daily activities.

He also asked Ms. Lawrence about side effects, and he discussed in detail the medications she was taking. (Tr. at 22, 59). Finally, he properly analyzed the objective medical findings. There was no error in the ALJ's evaluation of subjective complaints compared to the *Polaski* factors.

Finally, Ms. Lawrence says that the ALJ failed to develop the record. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a Plaintiff has the burden of proving her disability; the ALJ does not have to play counsel for the Plaintiff. *Id.* The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011).

The ALJ asked Ms. Lawrence's attorney if he had anything further to offer at the hearing, and he said no. (Tr. at 70). It was Ms. Lawrence's duty to provide evidence of her disability, and the only medical opinion she presented was the one sentence opinion from Dr. Ball. The medical evidence and the hearing testimony gave the ALJ plenty to base his opinion on. There was no crucial medical issue that was undeveloped. The ALJ did not fail in this regard.

## VI. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Lawrence was not disabled. The RFC incorporated all of Ms. Lawrence's limitations, the credibility analysis was proper, and the ALJ's decision was based on a fully developed record. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 13th day of March, 2019.

_____
UNITED STATES MAGISTRATE JUDGE